## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROBERT GRAY,

        Plaintiff,

v.                                                          No. CV 21-383 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

        Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Robert Gray's *Opposed Motion to Reverse and/or Remand* (the "Motion"), (Doc. 25), filed February 14, 2022; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 33), filed May 18, 2022; and Mr. Gray's *Reply in Support of Motion to Reverse or Remand* (the "Reply"), (Doc. 34), filed June 2, 2022.

Mr. Gray filed an application for child's insurance benefits based on disability[2] on May 4, 2018, and an application for supplemental security income on February 5, 2018, both alleging disability beginning on July 1, 2012. (Administrative Record "AR" 278). The onset date was later amended to May 30, 2018, his eighteenth birthday. (AR 11). In his application, Mr. Gray claimed he was unable to work due to ADHD, leg spasms,

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

[2] To be eligible for adult disabled child benefits based on the earnings record of an insured parent, the claimant must be over the age of 18, unmarried, and found disabled before her twenty-second birthday. 20 C.F.R. § 404.350(a); *see Leo v. Saul*, 1:18-cv-977 LF, 2020 WL 888600, at *2, n.6 (D.N.M. Feb. 24, 2020).

abnormal gait, anxiety, agoraphobia and sleep disorders. (AR 177). Mr. Gray's application was denied initially on November 5, 2018, and upon reconsideration on July 15, 2019. (AR 177, 184). Mr. Gray requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 23, 2020, before ALJ Jeffrey N. Holappa. (AR 11-24). A supplemental hearing was also held on October 6, 2020. (AR 11).

At the first hearing, Mr. Gray appeared with his attorney Benjamin Decker and impartial Vocational Expert ("VE") Thomas Greiner. (AR 38). His mother, Kristie Gray, also testified. (AR 38). At the supplemental hearing, Mr. Gray, his attorney, and VE Leslie White appeared. (AR 81). On November 2, 2020, ALJ Holappa issued his decision, based on both hearings, finding Mr. Gray not disabled at any time from the amended onset date, May 30, 2018, through the date of his decision. (AR 24). Mr. Gray requested review by the Appeals Council, which was denied on March 5, 2021, making ALJ Holappa's unfavorable decision the Commissioner's final decision for purposes of judicial review. (AR 1). Mr. Gray now challenges ALJ Holappa's November 2, 2020 decision denying his claim for child's insurance benefits based on disability and supplemental security income. *See* (Doc. 25).

In his Motion, Mr. Gray argues the following errors require remand: (1) the ALJ improperly failed to incorporate Esther Perea's assessment of limitations in concentrating on simple tasks, as well as other assessed limitations; (2) the ALJ failed to properly consider the opinions of Thai Nguyen, MD; (3) the ALJ improperly failed to include Mr. Gray's need for a walker in his Residual Functional Capacity ("RFC"); and (4) the ALJ failed to develop the record regarding Mr. Gray's volunteering. (Doc. 25 at 22-26).

2

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Holappa failed to adopt Ms. Perea's assessed limitations, without explanation, despite finding her opinion persuasive, the Court finds Mr. Gray's Motion is well-taken and should be **GRANTED**, and this case should be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

## I.       Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the

3

Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

4

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

In his applications for child's insurance benefits and supplemental security income, Mr. Gray claimed he was limited in his ability to work due to ADHD, leg spasms, abnormal gait, anxiety, agoraphobia and sleep disorders. (AR 177). At step one, ALJ Holappa determined Mr. Gray had not attained age twenty-two as of May 30, 2018, the amended onset date, meaning he remained eligible for child's insurance

benefits. (AR 14); *see* 20 C.F.R. § 404.350(a); *Leo*, 2020 WL 888600, at *2. ALJ

Holappa also determined Mr. Gray had not engaged in substantial gainful activity since

his amended onset date. (AR 14). At step two, ALJ Holappa found Mr. Gray had the

following severe impairments: partial epilepsy disorder, generalized anxiety disorder,

cognitive disorder, attention deficit hyperactivity disorder (ADHD), agoraphobia, panic

disorder, social anxiety disorder, mild to moderate intellectual disorder, borderline

intellectual functioning disorder, and history of remote traumatic brain injury. (AR 14).

At step three, ALJ Holappa determined Mr. Gray's impairments, solely or in

combination, did not meet or equal one of the listed impairments in 20 C.F.R.

§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 or 416.926. (AR 15). ALJ

Holappa then found Mr. Gray had the RFC to perform "light work" with the following

additional limitations:

> [L]ifting and carrying up to 20 pounds occasionally, 10 pounds frequently; sitting, standing, walking six hours in an eight hour day; pushing and pulling as much as lifting and carrying; occasional climbing of ramps and stairs; no ladders or scaffolds; no exposure to unprotected heights, moving mechanical parts, operat[ing] a commercial motor vehicle, or exposure [to] open flame; understanding, remembering, and carrying out simple, routine tasks; making simple work-related decisions; able to deal with changes in routine work setting; maintaining concentration, persistence and pace for at least two hour intervals; only occasional interactions with supervisors and coworkers; less than occasional (but more than none) with the general public.

(AR 17).

In formulating Mr. Gray's RFC, ALJ Holappa stated he considered Mr. Gray's

symptoms and the extent to which those symptoms could reasonably be accepted as

consistent with the objective medical and other evidence, as required by 20 C.F.R.

§§ 404.1529, 416.929 and Social Security Ruling ("SSR") 16-3p. (AR 17). ALJ Holappa

stated he considered opinion evidence consistent with the requirements of 20 C.F.R.

§§ 404.1520c and 416.920c, which apply to claims filed after March 27, 2017.[3] (AR 17).

He concluded that while Mr. Gray's impairments could be expected to cause some of

his alleged symptoms, the intensity, persistence, and limiting effects Mr. Gray described

were not entirely consistent with the evidence in the record. (AR 18).

ALJ Holappa found persuasive the opinions of state agency medical consultants

Kavitha Reddy, MD, and Karl K. Boatman, MD. (AR 20). ALJ Holappa also found

persuasive the opinions of state agency psychological consultants. Richard Sorensen,

PhD, and Joy Kelley, PhD. (AR 20). ALJ Holappa also found persuasive the opinion of

consultative examiner Athanasios Manole, MD, as his opinion was supported by an in-

person evaluation and his findings are generally consistent with objective evidence from

other sources. (AR 20). ALJ Holappa found persuasive the opinion of consultative

examiner Esther Perea, CNP, for similar reasons. (AR 21).

ALJ Holappa found the opinion of Dr. Nguyen to be unpersuasive, as Dr. Nguyen

had only seen Mr. Gray twice at the time of writing, and the opinion "is not consistent

with objective evidence from other sources." (AR 22). ALJ Holappa found unpersuasive

the joint opinion of Richard Campbell, PhD, and Stephanie Gorman, MA, as it "lacks

supportability and consistency" and the opinion "was given five years prior to the

amended onset date and does not include work-related limitations." (AR 22). Finally,

ALJ Holappa found that the Department of Veterans Affairs Rating Decision dated June

---

[3] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Mr. Gray filed his claim on May 4, 2018, the later regulations apply to this matter.

20, 2018 is "neither valuable nor persuasive" as it is a decision by another governmental agency. (AR 22).

At step four, ALJ Holappa found Mr. Gray, whose amended onset date was his eighteenth birthday, to have no past relevant work. (AR 22). ALJ Holappa proceeded to step five, finding Mr. Gray to be a "younger individual" who has at least a high school education. (AR 22). ALJ Holappa found, given the testimony of VE Greiner and VE White, and Mr. Gray's age, education, work experience, and assessed RFC, he could perform work as an assembler of small products, a routing clerk, or a collator operator. (AR 23). After finding Mr. Gray was able to perform work existing in significant numbers in the national economy, ALJ Holappa concluded he was "not disabled" as defined by 20 C.F.R. §§ 404.350(a)(5), 404.1520(g), and 416.920(g). (AR 24). Mr. Gray's petition to this Court followed. (Doc. 1).

## IV.    Analysis

Mr. Gray presents four arguments in his motion. (Doc. 25 at 22-26). First, he alleges ALJ Holappa improperly failed to incorporate Ms. Perea's assessment of limitations in concentrating on simple tasks, as well as other assessed limitations including her assessment of limited stress tolerance due to new environments and open spaces. *Id.* at 22. The Commissioner, meanwhile, argues that the limitation on concentration was encompassed by ALJ Holappa's limitation of concentrating and persisting for only two-hour intervals. (Doc. 33 at 5-6). The Commissioner contends that ALJ Holappa's RFC assessment also reasonably accounted for Mr. Gray's limited ability to tolerate stress. *Id.* at 6.

Second, Mr. Gray alleges that ALJ Holappa failed to properly consider Dr.

Nguyen's opinions. (Doc. 25 at 23). In particular, Mr. Gray argues that ALJ Holappa failed to consider Dr. Nguyen's own treatment notes, that he failed to consider the record in finding that Mr. Gray's ADHD is stable and that the evidence shows that Mr. Gray's "bizarre behavior and fears persist" even in a "controlled supportive environment." *Id.* at 23. Mr. Gray thus maintains that ALJ Holappa has engaged in improper cherry-picking of the evidence. *Id.* at 24. The Commissioner, on the other hand, argues that ALJ Holappa's decision reflected appropriate consideration of Dr. Nguyen's opinion, as the extreme limitations Dr. Nguyen found are inconsistent with objective evidence from other sources. (Doc. 33 at 6-7).

Third, Mr. Gray argues that ALJ Holappa improperly failed to include Mr. Gray's need for a walker in his RFC, even though Mr. Gray's doctors agree it is medically necessary due to his fear of falling. (Doc. 25 at 26). The Commissioner, meanwhile, maintains that ALJ Holappa discussed the walker and properly assessed an RFC that did not include the need for an assistive device due to evidence of Mr. Gray's normal gait, full strength, and ability to run for exercise, as well as Mr. Gray's own testimony that he no longer uses a walker. (Doc. 33 at 9).

Fourth, Mr. Gray contends that ALJ Holappa failed to develop the record regarding Mr. Gray's volunteering, and that his inference that Mr. Gray's volunteering is inconsistent with his symptom allegations is thus "pure speculation." (Doc. 25 at 26). The Commissioner, in turn, maintains that the record was sufficient for ALJ Holappa to make a well-supported determination that Mr. Gray's anxiety was not as severe as he alleged. (Doc. 33 at 10).

A.  *ALJ Holappa's Consideration of the Opinion Evidence*

Mr. Gray argues that although ALJ Holappa found Ms. Perea's consultative

examination report persuasive, he improperly failed to incorporate her opinion that Mr.

Gray is limited in his ability to concentrate on simple tasks, without explanation. (Doc.

25 at 22). Mr. Gray also contends that ALJ Holappa similarly failed to incorporate Ms.

Perea's opinion that Mr. Gray is limited in his stress tolerance due to difficulty with new

environments and open spaces. *Id.* He alleges that a limitation in the ability to

*concentrate* on simple tasks is not the same as having no limitation at all, and that this

error is prejudicial because the ability to maintain concentration and attention for

extended periods are required to perform *any* job. *See* (Doc. 34 at 1-2); (Doc. 25 at 21).

The Commissioner, in turn, argues that ALJ Holappa incorporated these

limitations in the RFC by including in his assessment that Mr. Gray can only concentrate

and persist for two-hour intervals. (Doc. 33 at 5-6). The Commissioner contends that

ALJ Holappa's discussion of Ms. Perea's opinion is sufficient to explain why he adopted

this limitation but not a further limitation on Mr. Gray's ability to perform simple tasks. *Id.*

at 5. The Commissioner maintains that ALJ Holappa also reasonably accounted for Mr.

Gray's limited ability to tolerate stress, by incorporating a limitation to simple, routine

tasks, simple work-related decisions, less than occasional interaction with the public,

and changes in a routine work setting. *Id.* at 6.

A medical opinion is a "statement from a medical source about what [a claimant]

can do despite [their] impairment(s) and whether [they] have one or more impairment-

related limitations or restrictions" in listed work-related abilities. 20 C.F.R.

§ 404.1513(a)(2)(i)-(iv). It is not necessary for an ALJ to delineate the direct

correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7; *see Silva v. Saul*, 1:19-cv-913 WJ/KK, 2020 WL 4220862, at *7 (D.N.M. July 23, 2020), *report and recommendation adopted*, 2020 WL 7890832 (D.N.M. Aug. 7, 2020).

Furthermore, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Guadagnoli v. Colvin*, 1:15-cv-0214 MCA/LF, 2016 WL 9777190, at *6 (D.N.M. June 16, 2016), *report and recommendation adopted*, 2016 WL 10179287 (D.N.M. July 8, 2016) (finding error where the ALJ's analysis left the Court "to guess at what overall medical evidence the ALJ relied on to come to [a] middle ground") (internal quotation marks omitted). The Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

   *i. Ms. Perea's Opinion*

Ms. Perea noted that Mr. Gray reported he requires "constant reminders" during

the day to stay on task. (AR 646). She opined that while he can understand, retain, and follow instructions, his ability to sustain attention to perform even simple, repetitive tasks is limited, "due to [Mr. Gray's] report of difficulty sustaining attention and requiring multiple reminders throughout the day to complete tasks." (AR 649). Ms. Perea also found Mr. Gray's ability to relate to others, including coworkers and a supervisor, to be limited, "due to [Mr. Gray's] report of increased anxiety in new environments and around large crowds." (AR 649). Ms. Perea further opined that Mr. Gray's ability to tolerate the "stress/pressures associated with day to day work activity" to be limited, "due to [Mr. Gray's] report of increased anxiety around large crowds, new environments, and open spaces." (AR 649).

ii.    <em>ALJ Holappa's Mental RFC Assessment</em>

In determining Mr. Gray's mental RFC, ALJ Holappa discussed Ms. Perea's opinion. (AR 21). He noted Ms. Perea's assessment of limitations in performing even simple, repetitive tasks, in relating to others, and in tolerating the stress associated the daily work activity. (AR 21). He found this opinion persuasive because, as with the prior administrative medical findings, Ms. Perea's opinion was supported by references to the record that was available at that time, and her findings were consistent with objective evidence from other sources. (AR 21). Additionally, ALJ Holappa noted that Ms. Perea's opinion was supported by an in-person examination. (AR 21). He indicated he found the word "limited" to be vague, but stated that Mr. Gray testified to "being easily distracted, which supports a limited ability to sustain attention to perform simple repetitive tasks." (AR 21). With regard to Ms. Perea's mental RFC, ALJ Holappa found that Mr. Gray is capable of "understanding, remembering, and carrying out simple, routine tasks; making

12

simple work-related decisions; able to deal with changes in routine work setting; maintaining concentration, persistence and pace for at least two hour intervals; only occasional interactions with supervisors and coworkers; less than occasional (but more than none) with the general public." (AR 17).

The Commissioner argues that ALJ Holappa incorporated the limitations noted by Ms. Perea into the mental RFC by including in his assessment that Mr. Gray can only concentrate and persist for two-hour intervals. (Doc. 33 at 5-6). ALJ Holappa contended that the word "limited" was vague, (AR 21), but in the context of Ms. Perea's report, in which she documented that Mr. Gray requires "constant reminders" to stay on task, even at home, where he is not subject to workplace stress, it is clear to the Court that Ms. Perea intended a greater limitation. (AR 646). In other words, "constant reminders" are more frequent than every two hours. *See* POMS DI 25001.001 (defining "constantly" as occurring "two-thirds or more of an eight-hour day.")

Additionally, whatever Ms. Perea meant by "limited," she clearly assessed *some* limitation on Mr. Gray's ability to complete simple tasks. *See Haga*, 482 F.3d at 1207-08 (explaining that "a moderate impairment is not the same as no impairment at all" and holding that there was reversible error where the ALJ rejected, without explanation or evidentiary support, certain "moderate impairments" found by a medical consultant but adopted other "moderate" restrictions found by the same consultant). Despite finding the opinion of Ms. Perea persuasive, ALJ Holappa's RFC determination therefore did not adopt her finding that Mr. Gray is limited in his ability to concentrate on carrying out simple, routine tasks. (AR 17).

### iii.   Whether ALJ Holappa's Mental RFC Assessment Constituted Error

The Commissioner contends that ALJ Holappa's discussion of Ms. Perea's opinion is sufficient to explain why he adopted this limitation but not a further limitation on Mr. Gray's ability to perform simple tasks. ALJ Holappa's discussion consisted of the sentence, "Although 'limited' is vague, the claimant reported being easily distracted, which supports a limited ability to sustain attention to perform simple repetitive tasks." (AR 21). He then, however, failed to incorporate *any* limitation on Mr. Gray's ability to perform simple repetitive tasks into the RFC. The Court therefore finds this explanation to be insufficient.

ALJ Holappa was not required to adopt Ms. Perea's findings verbatim, but, contrary to the Commissioner's assertion, he remained obligated to consider all relevant evidence in the case record in reaching his disability determination. *Silva*, 2020 WL 4220862, at *4 (citing 20 C.F.R. §§ 404.1520b, 416.920b). ALJ Holappa's failure to either adopt all limitations assessed by Ms. Perea, or explain why he declined to adopt them, constituted error. SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."); *see Silva,* 2020 WL 4220862, at *7; *Vigil v. Saul*, 1:20-cv-632 CG, 2021 WL 2117184 (D.N.M. May 25, 2021) (finding error where ALJ failed to incorporate limitation on interacting with supervisors, or explain rejection of such limitation, despite finding opinion persuasive). The issue the Court must consider next is whether such error was harmful, mandating reversal and remand.

### iv.   Whether ALJ Holappa's Failure to Incorporate Ms. Perea's Assessed Limitations was Harmful Error

An ALJ's error may be considered harmless in exceptional circumstances,

"where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In the context of analyzing objective evidence, the Tenth Circuit "allow[s] the ALJ to engage in less extensive analysis where 'none of the record medical evidence conflicts with [his or her RFC] conclusion.'" *Wall v. Astrue*, 561 F.3d 1048, 1068-69 (10th Cir. 2009) (citing *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). It is clear that "when the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened." *Howard*, 379 F.3d at 947.

The ability to maintain concentration and attention for extended periods is one of the basic mental abilities needed for any job. *Program Operations Manual System* ("POMS") § DI 25020.010.B.2.a. A "substantial loss of ability" in this area may "severely limit[] the potential occupation base" and would thus "justify a finding of inability to perform other work even for persons with favorable age, education and work experience." POMS § DI 25020.010.A.3.b; *see* 20 C.F.R. § 404.1545(c) ("A limited ability to carry out certain mental activities . . . may reduce [the claimant's] ability to do past work and other work.").

Because the ability to concentrate is critical to the performance of any work, Ms. Perea's conclusions regarding Mr. Gray's ability to concentrate on even simple, repetitive tasks may have impacted ALJ Holappa's calculation of his mental RFC. *See* POMS § DI 25020.010.B.2.a. As such, Ms. Perea's conclusions regarding Mr. Gray's ability to concentrate adequately even to perform simple, repetitive tasks was

significant, probative evidence that ALJ Holappa was required to discuss in order for substantial evidence to support his findings. POMS § DI 25020.010.B.2.a; *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2006) (requiring ALJs to give good reasons for their findings—reasons that are sufficiently specific to allow for meaningful review). This oversight is especially troubling in this case, where Mr. Gray's mother testified that he must be queued to complete even simple, manual tasks in the home, such as vacuuming, (AR 69), and where the record contains evidence that Mr. Gray must be reminded to complete basic activities of daily life such as taking his medication, washing himself, and going to his appointments, (AR 329, 348, 739), as well as evidence of "[d]ebilitating anxiety" and ADHD. (AR 14, 747).

ALJ Holappa's failure to either adopt, or explain why he declined to adopt, Ms. Perea's assessed limitation of Mr. Gray's ability to concentrate adequately to perform even simple, repetitive tasks leaves the Court with no guidance to perform a meaningful review of ALJ Holappa's analysis of Mr. Gray's mental limitations in the context of his RFC. *See Vigil*, 2021 WL 2117184. Therefore, the ALJ Holappa's failure to discuss the Ms. Perea's conclusions regarding Mr. Gray's limitations on completing simple, repetitive tasks, even merely to explain why he found them unpersuasive, constitutes harmful and reversible error. *Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. Oct. 19, 2006) (unpublished) ("The failure to apply the correct legal standard[s] or to provide this court with a sufficient basis to determine that appropriate legal principles have been

16

followed is grounds for reversal.") (internal citations omitted). The Court thus finds that remand is appropriate. Because the Court finds this reason alone constitutes harmful error mandating remand, the Court will not address the parties' other arguments.

### V.    Conclusion

For the previously stated reasons, the Court finds that ALJ Holappa committed harmful legal error when he failed to adopt Ms. Perea's assessed limitations, without explanation, despite finding her opinion persuasive.

**IT IS THEREFORE ORDERED** that Mr. Gray's *Opposed Motion to Reverse and/or Remand*, (Doc. 25), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE